HAMMOND et al. v. MANHATTAN ELECTRICAL SUPPLY CO.

(Circuit Court of Appeals, Second Circuit.   June 9, 1916.)

No. 294.

PATENTS ⚙328—CONSTRUCTION—INFRINGEMENT.
 Patent No. 1,086,820, for a device for making electrical contact, with the posts of dry cells or batteries by means of two superposed flat metallic plates, *held*, in view of the previous art, not to be infringed by defendant's device for making such contact.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by William P. Hammond, Patrick J. Fitzgerald, and Morris F. Fitzgerald, copartners, doing business as the Fitzgerald Manufacturing Company, against the Manhattan Electrical Supply Company. From a decree finding that defendant's device did not infringe complainants' patent, they appeal.   Affirmed.

The District Court has held valid patent No. 1,086,820, granted to the plaintiff Hammond on February 10, 1914.   It has held that one of the defendant's devices (marked "Exhibit 7") infringes this patent, but that another form of the defendant's device (marked "Exhibit A") does not infringe.   From the latter holding the plaintiff has appealed.

C. E. Dunn, of New York City, for appellants.
Howson & Howson, of New York City, for appellee.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

CHATFIELD, District Judge.   This patent shows a device for making electrical contact with the posts of dry cells or batteries.   Two superposed flat metallic plates with a circular opening in each are attached to each end of the contact cord.   Each plate has a finger-engaging flange projecting at a right angle from the outside edges of the plate.   Resilient spring arms spread the two plates apart unless pinched together so that the openings in the plates may slide upon the post of the cell.   The spring arms then hold the plates in place by spreading when the finger pressure is released.

It appears that the use of two such washer-like plates with a slightly overturned edge (that upon one washer being turned down and that upon the other turned up) was old in the art.   One form of defendant's device, which it is claimed was placed upon the market at about the same time as the issuance of the patent in suit, shows (Exhibit 7) upturned flanges running from the circumference of the washers back along the sides of the resilient arms.   No appeal has been taken from the decree holding this to be an infringement of both claims 1 and 2 of the patent.

⚙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Claim 1 locates the finger-engaging flanges in such a position as to be susceptible of receiving the clamping nut of the binding post between the flanges, while claim 2 locates the flanges merely at the outer edges of the plates and opposed to each other. Claim 2 is broader in that it includes more possible forms of the device. But any pair of opposed flanges capable of transmitting forces which will draw the two plates together when the outside surfaces of the flanges are pinched, would necessarily require such shape and dimensions of the parts as to make the clamping nut and the binding post occupy a position between the flanges or between the parallel tangential components of the compressing force. In other words, even if the nut is of unusual shape or size, it must (or some part of the nut must) be small enough to screw down within the projections of the two parallel components of the compressing force.

In this sense mere extension of the finger-engaging flanges, so as to rigidly transmit this compressing force from some other point of pressure, or to apply the parallel compressing components by rigid transmission members, would not avoid the charge of infringement unless the prior art limits the plaintiff to the precise form of flange (that is, shape of flange) disclosed in the patent.

Examination of the file wrapper, also of the British patent to Nickells, No. 5,476, of 1906, as well as the T. A. Hammond patent, No. 940,012, of 1909, and the W. P. Hammond patent, No. 1,039,279, of 1912, makes it apparent that the patentee was limiting his construction in order to show patentability over the earlier patents and prior art. He sought to describe a connector which could be easily applied and in which the available parallel components of the compressing forces should be as great as possible. He therefore made the flanges surround or be directly opposite the center of the post and the nut, and sought to avoid the idea of the defendant's structure which is to exert a sufficient compressing component on each side of the post, but which removes the points of application of that pressure to points further toward the center of the springing arms, and more distant than the radius of the nut (at all positions of compression) from the center of the nut itself.

The prior art device showed the spring arms so shaped that pressure brought the holes in the plates in line ready to be placed upon or taken off the post, and in applying his idea to this device the patentee, following the teachings of the patents above recited (including one of his own) sought a mechanically operative structure in which the flanges would be directly at the natural point for exerting pressure both to pinch the springs together and to press the contact plates down upon the post of the battery.

Hence in both claims 1 and 2 he stated that the flanges were to be "projecting * * * from the outer edges of the plates."

This the defendant's pressure flanges do not do in the form known as "Exhibit A." Each form of device is claimed to have some ad-

vantage of convenience and utility. With this we have nothing to do, and while the claims seem to be valid in a strict sense they are not infringed by the structure called "Exhibit A."

The decree of the District Court will be affirmed.